**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Booker T. DUKE, Defendant-Appellant.**

**No. 15460.**

United States Court of Appeals Seventh Circuit.

Nov. 15, 1966.

Rehearing Denied Dec. 7, 1966.

Certiorari Denied Feb. 20, 1967.

See 87 S.Ct. 957.

Charles A. Walton, Robert H. Van Brunt, Paul H. Frazier, Indianapolis, Ind., for appellant.

Richard P. Stein, U. S. Atty., James Manahan, Atty., Indianapolis, Ind., for appellee.

Before MAJOR, Senior Circuit Judge, and CASTLE and CUMMINGS, Circuit Judges.

MAJOR, Senior Circuit Judge.

Defendant, Booker T. Duke, and Richard Lee Allen were charged by indictment with receiving, concealing and facilitating the transportation of 163 grams of heroin, a narcotic drug, which had previously been imported into the United States contrary to law, knowing the same to have been unlawfully imported, in violation of Title 21 United States Code Sec. 174. From a judgment entered upon an adverse jury verdict Duke appeals.

Prior to trial defendant moved to suppress evidence alleged to have been obtained by the unauthorized search of his person and automobile in connection with his alleged illegal arrest. The court, after a hearing, denied the motion, and the evidence was admitted at the trial.

Defendant as grounds for reversal advances three contentions: (1) that there was not sufficient probable cause to justify the apprehension and search of defendant and his automobile and that his motion to suppress the evidence obtained thereby was improperly denied; (2) that certain statements made by defendant while in the custody of officers were erroneously admitted in evidence because obtained from him before he had been sufficiently advised of his constitutional rights, and (3) that the evidence was insufficient to prove that defendant had knowledge that the involved narcotics had been illegally imported into the United States.

A brief statement of the evidence developed at the hearing on the motion to suppress appears to be appropriate. At about 10 a. m. on October 15, 1964, narcotic detectives Richard Jones and Dora Ward were approached by Emanuel Sims who advised them that defendant had left for Chicago at 3 o'clock that morning in the company of Allen, in a 1960 Ford bearing 1964 Indiana license 93A7884, for the purpose of purchasing a large amount of heroin, and were due back in Indianapolis at any time. Sims also told the officers that he was present when defendant and Allen left for Chicago and heard them discuss the purpose and plan of their trip. Jones was acquainted with defendant and Allen and had known Sims for three or four years. Previously he had made several arrests on the basis of information furnished by Sims.

After receiving the aforesaid information, Jones and Ward called to their aid a number of state officers, including Sgt. Larsen of the Indiana State Police, and motorcycle officer Roland Gibson. A surveillance was set up on highway 52, the normal route between Indianapolis and Chicago. All of the officers were given a description of the car and its license number, as furnished by Sims. At about 3 p. m., Jones received radio information that Larsen was following an automobile of that description. A few minutes later the automobile passed the station where Jones was located and he saw defendant and Allen in the car. Jones followed the car, which was also being followed by Gibson, who clocked its speed at 44 miles per hour in a 30-mile zone. Gibson stopped the car, which was being driven by Allen with defendant seated on the passenger side of the

front seat. Defendant reached under the front seat, whereupon Gibson drew his revolver and told both occupants not to move. At almost the same time Jones and other officers arrived, and the occupants were required to get out of the car. Jones reached under the front passenger seat and discovered a sack containing approximately 30 small packages, each of which held white powder. Jones then conducted an on-the-scene field test on the contents of some of the packages and obtained an affirmative indication that they contained narcotic drugs. This indication was later properly verified, and it was the property thus obtained which constituted the subject matter of defendant's motion to suppress.

■ The gist of defendant's argument relative to his motion to suppress is that the arrest and search were unlawful because of the failure of the officers, at a time when the courts were open, to obtain a warrant for his arrest or a warrant to search, in view of the fact that they had some five hours to do so. This time element is calculated on the basis that the officers received information from Sims at about 10 a. m. and defendant's arrest and the search did not take place until 3 p. m. In this connection, it is pertinent to note that according to the information furnished by Sims, defendant and Allen left Indianapolis for Chicago at 3 a. m. In the absence of record proof, we take judicial notice of the fact that the distance from Indianapolis to Chicago and return is less than 400 miles, or about an 8-hour drive.

Certainly the officers had a solid basis for belief that defendant and his companion might be returning to Indianapolis at any time, and ample justification for placing the highway under surveillance. Any doubt which they might have had at that time as to the existence of probable cause to arrest and search was completely dispelled when they observed an approaching car of the same description, with the same license number and the same occupants (including defendant) as Sims had predicted.

Pertinent to the situation is a statement in United States v. Rabinowitz, 339 U.S. 56, 65, 70 S.Ct. 430, 435, 94 L.Ed. 653, "Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential."

■ In any event, irrespective of the time element, the cases strongly support the right, where probable cause exists, of an officer to arrest and search without a warrant. A case with similar facts is Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. There, the federal narcotic agents received information from an informer that the defendant had left Denver by train for Chicago, was going to bring back a quantity of heroin and would return either on the morning of September 8 or 9. The informer gave the agents a description of the defendant. The agents watched the train arrivals on the first day without avail. On the second day a person of the description given to the agents by the informer alighted in Denver from the Chicago train. The officers without a warrant arrested him and searched his person. The court affirmed a conviction over the protest that the arrest and search were illegal. The only difference between that and the present case is that here the officers not only arrested the defendant and searched his person but also the car in which he was riding. We think it evident that the officers had probable cause to believe that the automobile was being used by defendant in the transportation of the contraband material and the right to search it.

The right to arrest, search and seize without a warrant as recognized in *Draper* has been given effect in many

cases, particularly where a moving object such as an automobile was involved. See United States v. Bracer, 2 Cir., 342 F.2d 522, 523; United States v. Santiago, 2 Cir., 327 F.2d 573, 574; United States v. Thomas, 6 Cir., 319 F.2d 486. In the latter case the court sustained a search of an automobile without a warrant with the statement (page 488) that it was not necessary to obtain a search warrant "if it appeared likely at the time that the delay incident to obtaining a warrant would result in losing the opportunity to apprehend the law violator" (citing cases).

We hold that the motion to suppress was properly denied and, consequently, that the evidence obtained by the search of the subject automobile was admissible.

Defendant contends that certain statements made by him while in the custody of officers were erroneously admitted in evidence because of a failure to advise him sufficiently of his constitutional rights. Defendant's sole reliance on this point is Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. The facts of that case vary so widely from those here that we think its rationale is without application.

There is no serious dispute in the evidence as to what took place after defendant's arrest. He was placed in the squad car of officers Jones and Ward and taken to the police station. During the trip defendant voluntarily stated, "You have got me up tight. What can I do to help myself?" Ward replied, "You don't have to talk to me at all." At the station Jones asked defendant if he would like to have an attorney summoned and defendant replied, "No, I will get one in court tomorrow." He was told at that time by officer Owen that he was entitled to have his attorney present, and defendant replied that he would rather try to help himself and cooperate and that he did not wish an attorney. Again defendant stated that he would like to help himself because the investigators apparently had him "up tight." He voluntarily stated that he obtained the narcotics from a man nicknamed "Copperhead" who operated in Chicago, and that defendant had paid $1500 for the narcotics which had been confiscated from the subject automobile. The next morning a federal warrant was issued and defendant was taken before a United States Commissioner. He was again told by the federal agent that he did not have to say anything, and he was requested to talk to his lawyer. He was also told that anything he said might be used against him, to which he responded, "I don't care what my lawyer says; I want to cooperate and help myself."

We think it plain that he was fully advised of his right to an attorney and that he persisted in a refusal to have one in the belief that he could better help himself.

Defendant makes the point that he was not advised of his rights prior to making the statement in the squad car while on the way to the station. Even so, this statement was not incited, induced or called for by anything said or done by the officers. The unsolicited statement was a voluntary utterance by defendant. We think the constitutional rights of a person under arrest or in custody do not require an officer to gag him or seal his lips in order to prevent him from making a statement.

Lastly, defendant contends that there was no proof that he had knowledge that the narcotic drugs found in his possession were unlawfully imported into the United States. This question was not raised in the trial court and is not properly here for review. In any event, the contention is wholly without merit. See United States v. Kapsalis, 7 Cir., 313 F.2d 875, 877; United States v. Norton, 2 Cir., 310 F.2d 718, 719; United States v. Johnson, 7 Cir., 260 F.2d 508, 509.

The judgment appealed from is
Affirmed.