**Donald A. DIAZ**

v.

**UNITED STATES of America.**

Misc. No. 1234

United States District Court
E. D. Louisiana,
New Orleans Division.

March 2, 1967.

James F. Mulla, Jr., New Orleans, La. (Appointed by the Court) for plaintiff.

John C. Ciolino and Harry F. Connick, Asst. U. S. Attys., New Orleans, La., for defendant.

## OPINION

RUBIN, District Judge.

Donald A. Diaz was convicted by a jury on a three-count indictment charging him with importing and bringing marijuana into the United States, in the form of hashish, concealing hashish after it had been imported contrary to law, and having hashish in his possession aboard a U. S. vessel when it was not a part of the ship's cargo or stores. Experienced counsel retained by him represented Diaz at the trial. After the conviction, he was sentenced to five years imprisonment. No motion for a new trial was filed and no appeal was taken. He now seeks relief under 28 U.S.C.A. § 2255. For the reasons set forth below, relief is denied.

Diaz had been a member of the crew of the merchant vessel S. S. GREEN DALE. He was arrested by U. S. Customs Agent Billy D. Tennyson and U. S. Customs Investigator Myers, at about 6:50 o'clock a. m., November 14, 1964.

The vessel had docked in New Orleans after midnight on November 14, 1964. Shortly thereafter Diaz went ashore. Later during the night, he returned to the ship, and went to a room used for storage. One of the ship's officers, Alfred J. Tannler, looked through the porthole and observed Diaz there.

As a result of what he observed, Tannler became suspicious of Diaz and ques-

tioned him. Apparently Tannler did not recognize Diaz as a member of the crew. However, Diaz was later able to identify himself. Diaz testified that he was told that he had the right to leave the ship but voluntarily chose to remain. However, the testimony taken at the prior trial indicates that Diaz tried to leave but was forcibly prevented from leaving by Chief Mate Lilly at about 4:25 a. m. This testimony indicates that Lilly summoned two army guards, who were members of the port police. They arrived about 5:30 a. m. and thereafter prevented Diaz from leaving the ship.

At about 6:05 a. m., U. S. Customs Agent Billy Tennyson boarded the ship. He spoke with the ship's officers on duty, went to the spare room, and later went to the quarters of Chief Mate Lilly. About 25 minutes later, after conversation with Chief Mate Lilly and Diaz, Tennyson went to the spare room and, in the presence of Diaz, U. S. Customs Investigator Myers, Third Mate Bruce B. Elfast, the vessel's other third mate, Mr. Bangeman, and others, he took some screws out of the overhead panel in the ceiling of the spare room and found a pillow case containing 11 pounds of hashish.

The testimony at Diaz' trial was to the effect that, as Tennyson removed the pillow case, Diaz said "Well, I'm glad you found it; I'm glad you found it." Shortly thereafter, at 6:50 a. m., Diaz was arrested.

Prior to Diaz' arrest, no one advised him of his right to counsel, or of his right to remain silent, and no one warned him that anything he said might be used as evidence against him.

Diaz was tried in the United States District Court for the Eastern District of Louisiana, on November 18 and 19, 1965, on three counts. He was charged in count one with importing and bringing into the U. S. 11.93 pounds of marijuana in the form of hashish, which was not included in the manifest of the American vessel, the S. S. GREEN DALE, as required by Title XIX, U.S.C. Section 1431, and in violation of Title 21, U.S.C. Section 176a. He was charged in count two with concealing and facilitating the concealment of approximately 11.93 pounds of marijuana, in the form of hashish, knowingly and with intent to defraud the United States, after this marijuana had been imported and brought into the United States contrary to law, knowing it to have been imported and brought into the United States contrary to law, and in violation of Title 21, Section 176a. The third count charged him with having in his possession or control on board the American vessel S. S. GREEN DALE 11.93 pounds of marijuana in the form of hashish, not constituting a part of the cargo, entered into the manifest, or part of the ship's stores of the S. S. GREEN DALE, all in violation of Title 21, § 184a.

Diaz retained Sam Monk Zelden as his lawyer and Mr. Zelden associated Bruce Borrello with him. Mr. Zelden is an experienced lawyer who has been a member of the Louisiana Bar for 33 years. For approximately 20 years he has devoted a large part of his time to the defense of persons accused of violation of criminal laws, in State and Federal courts, and he has had considerable experience in prosecuting appeals in such cases. Mr. Borrello has been a member of the Louisiana Bar since 1961. He has engaged actively in the defense of persons accused of violation of criminal laws.

The issues raised by Diaz in this motion are dealt with separately below. However, since the issues raised by this motion include a charge that the Judge who presided at Diaz' original trial improperly charged the jury and a charge that he was improperly questioned before he was brought before a U. S. Commissioner, the court ordered a transcript of that part of the proceedings in the prior trial relevant to the issues now being raised. While a full transcript was requested by the applicant, it appeared to be unnecessary to have a complete transcript to consider adequately the applicant's claim, and Diaz is not entitled to a transcript beyond what was necessary to enable him adequately to present his motion to vacate to the court.

See United States v. Glass, 317 F.2d 200 (4th Cir. 1963). The court finds that this partial transcript of the prior trial was adequate for the purpose.

The court ordered a full evidentiary hearing. During the course of the hearing, the testimony advanced suggested additional issues which had not been raised by the petition. The Court granted petitioner additional time to develop these issues and to summon witnesses to testify with regard to any claim that the petitioner might have for relief, whether or not raised by the petition filed. It is the court's opinion that the petitioner is not entitled to relief on any of the grounds suggested by him. In reaching this conclusion, the court considered each of the following issues.

## I. *Collateral Attack*

■ The grounds raised by applicant, when analyzed in detail, do not entitle him to the relief sought. But it should be noted at the outset that the purpose of Section 2255 was simply to provide a remedy in the sentencing court coextensive with the one previously available by habeas corpus in the court of the district where the prisoner was confined. Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). The scope of the remedy is described in Howell v. United States, 172 F.2d 213, 215 (4th Cir. 1949) by Chief Judge Parker, the Chairman of the Judicial Conference Committee, which proposed Section 2255, as follows:

"* * * It is elementary that neither habeas corpus nor motion in the nature of application for writ of error coram nobis can be availed of in lieu of writ of error or appeal, to correct errors committed in the course of a trial, even though such errors relate to constitutional rights. It is only when there has been the denial of the substance of a fair trial that validity of the proceedings may be thus collaterally attacked or questioned by motion in the nature of petition for writ of error coram nobis or under 28 U.S.C.A. § 2255."

See also Killebrew v. United States, 275 F.2d 308 (5th Cir. 1960).

■ The motion to vacate a sentence under Section 2255 is in form a direct attack. But it is limited to those matters that may be raised by collateral attack on the original conviction. Haynes v. United States, 339 F.2d 30 (5th Cir. 1964), cert. den. 85 S.Ct. 926, 380 U.S. 924, 13 L.Ed.2d 809; Huizar v. United States, 339 F.2d 173 (5th Cir. 1964), cert. den. 380 U.S. 959, 85 S.Ct. 1099, 13 L.Ed.2d 975; Schmidt v. United States, 286 F.2d 11 (5th Cir. 1961); Arthur v. United States, 230 F.2d 666 (5th Cir. 1956).

■■ Thus, for example, error in instructing the jury at the trial, here alleged as justifying relief, is not a matter which is subject to collateral attack. Rush v. United States, 225 F.Supp. 843 (D.C.La.1964); West v. United States, 217 F.Supp. 391 (D.C.D.C.1963), affirmed 117 U.S.App.D.C. 90, 326 F.2d 633. And collateral attack will not be permitted where appellant made no effort to suppress illegally obtained evidence prior to or during his trial. See Armstead v. United States, 318 F.2d 725 (5th Cir. 1963).

■ Unreasonable "delay in taking an accused before a commissioner, though illegal, does not invalidate a conviction in the absence of prejudice resulting from the detention." Morse v. United States, 256 F.2d 280 (5th Cir. 1958). Nor is such a detention the proper subject of collateral attack asserted against a conviction resulting from a trial not infected by denial of constitutionally guaranteed rights. Kristiansand v. United States, 319 F.2d 416 (5th Cir. 1963). See also Adkins v. United States, 298 F.2d 842 (8th Cir. 1962); Mitchell v. United States, 110 U.S.App.D.C. 462, 293 F.2d 161 (1961); Kent v. United States, 272 F.2d 795 (1st Cir. 1959).

The jurisprudence relating to collateral attack on a conviction obtained through alleged illegal search was fully reviewed by the Court of Appeals for the District of Columbia in Thornton v. United

States, 368 F.2d 822 (D.C. Cir. 1966). The Court there held that "a claim by a federal prisoner that evidence admitted at his trial was the fruit of an unconstitutional search or seizure is not properly the ground of a collateral attack on his conviction." This was but the reaffirmation of that court's earlier view that the normal method of correcting trial errors, even as to constitutional questions, is by appeal and that habeas corpus cannot serve as a substitute for the regular judicial process of appeal in the absence of circumstances indicating that a right to attack collaterally is needed to provide an effective means of preserving constitutional rights.

 The writ of habeas corpus and its brother remedy, Section 2255, are the means of vindicating constitutional and statutory rights. Their use in the service of free men under constitutional government must not be diluted. But all litigation must some day come to an end. After reviewing all of the issues raised by the applicant and a partial transcript of his trial, I am convinced that, represented by counsel of his own choice, he had a completely fair trial. In considering the right to § 2255 relief, the question is only whether "one adequate litigation has been afforded." See dissent of Circuit Judge J. Skelly Wright, Thornton v. United States, 368 F.2d 829, at 831. Applicant has had his fair day in court. He is not now entitled to another. A detailed analysis of the issues now raised demonstrates this clearly.

*II. Petitioner Was Arrested and Questioned By the U. S. Authorities in the Absence Of Counsel.*

 The first ground alleged as a basis for relief is that petitioner "was arrested and questioned by the U. S. authorities in the absence of counsel." But there is no requirement that an accused person have counsel appointed before law enforcement officers can arrest him. Of course, Rule 5(a) of The Federal Rules of Criminal Procedure does require an officer making an arrest to take the arrested person before the nearest available Commissioner without unnecessary delay. And once an investigation becomes accusatorial, the accused has a constitutional right to be warned of his right to remain silent, of the fact that anything he says may be used against him, and of his right to counsel. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). There is no evidence to suggest that this was not done in Mr. Diaz' case.

 Petitioner alleges that he was questioned in the absence of counsel but there is no evidence of this. In addition, if in fact this did occur, there was no evidence introduced at the trial that was obtained directly or indirectly as the result of interrogation, and Diaz testified that he made no statements that were damaging to him during this period. Even if such questioning did in fact occur, it is not therefore ground for vacation of the sentence.

 It is possible to argue that the detention of Diaz aboard the vessel awaiting the arrival of U. S. Customs officials constituted an arrest and that thereafter the investigation was directed solely at him. The significance of the decision in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), is clearly that a confession is inadmissible if it is obtained from a person under arrest as the result of questioning during a period when he was denied the right to see his lawyer and was not warned of his right to remain silent. However I do not think that it can be said that the action of the ship's officers in detaining Diaz until the Customs officials arrived constituted an arrest under the circumstances present here. The petitioner does not contend that this was an arrest. The action taken by the ship's officers and the army guards was not taken by or on behalf of law enforcement officers but apparently constituted merely an effort to be certain Diaz remained aboard pending a general investigation. He was not interrogated, and indeed he denied that

he said anything damaging. If he was questioned, he apparently said nothing that was used against him, except to utter a single spontaneous statement discussed more fully below. The mere facts of his arrest and questioning did not violate Diaz' rights.

### III. Denial of Access to Counsel During 24 Hours of Questioning.

The next ground set forth by the petitioner is that he "was denied access to counsel during 24 hours of questioning and interrogation and investigation." What has already been said applies here as well. Petitioner has made no showing that his access to counsel was denied by any law enforcement officers but, if it was, he has shown no prejudice as a result of the denial. See Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958).

Even if it were applicable, the decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) would not change this result. That case, like Escobedo, deals "with the *admissibility* of statements obtained from an individual who is subjected to custodial police interrogation." The Court declared its holding to be that "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." But the defendant is not entitled to acquittal even if he is denied access to counsel unless his privilege against self-incrimination was abused.

### IV. Failure to Take Petitioner Before A Commissioner.

The evidence does not support the applicant's charge that he was "not taken before a commissioner at the earliest opportunity after the arrest. * * * *" But even if this had happened, the issue was not raised at the prior trial. And if it had been, there would be no difference in result because

no prejudice was shown to have resulted to applicant from any delay.

Incriminatory statements obtained during a period of unlawful detention are inadmissible. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). But the mere fact that an accused was illegally detained without being taken before a committing authority with reasonable promptness does not void a conviction based upon competent evidence. Blood v. Hunter, 150 F.2d 640 (CCA 10, 1945). Even illegal delay in taking an accused before a Commissioner does not invalidate a conviction in the absence of prejudice resulting from the detention. Morse v. United States, 256 F.2d 280 (CCA 5, 1958); McFarlane v. United States, 231 F.Supp. 191 (D.C.N.Y.1964). And such delay is not a basis for collateral attack upon a judgment of conviction. Adkins v. United States, 298 F.2d 842 (CCA 8, 1962), cert. den. 370 U.S. 954, 82 S.Ct. 1604, 8 L.Ed.2d 819.

In any event, the proper time for the accused to object to a failure to bring him before a commissioner without unreasonable delay is at the time when the government offers the fruit of a period of illegal detention in evidence. United States v. Miller, 293 F.2d 697 (2d Cir. 1961). If evidence obtained during an illegal detention is offered, a defendant who fails to object timely cannot obtain relief even on appeal. United States v. Sailer, 309 F.2d 541 (6th Cir. 1962), cert. den. 374 U.S. 835, 83 S.Ct. 1884, 10 L.Ed.2d 1057. A fortiori, no relief should be available by motion to vacate.

### V. Failure to Inform Petitioner of His Rights.

The applicant contends that his sentence should be vacated because he was "not informed of his rights by arresting officers." He has however failed to show any prejudice as a result of the failure to warn him at the time of his arrest.

Should a warning have been given applicant by the ship's officers before he

was arrested? Or should it have been given at the time the Customs officials came aboard? And, if it should have been given at either time, is Diaz entitled to relief because of the failure to warn him that he had a right to remain silent and that anything he said might be used against him?

Diaz was tried on November 18, 1965. In Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the court held that the *Miranda* decision applied only to cases "in which the trial began after the date of our decision," June 13, 1966. Therefore, even if that decision were relevant, it would not apply here. In holding that the *Escobedo* rule would be applied to cases tried after June 22, 1964, the date of that decision, the Court, in *Johnson,* expressly stated the extent of the *Escobedo* rule:

> "Apart from its broad implications, the precise holding of Escobedo was that statements elicited by the police during an interrogation may not be used against the accused at a criminal trial,
>
> > '[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent * * *.' 378 U.S. at 490–491, 84 S.Ct., at 1765."

Obviously, Diaz cannot claim that the *Escobedo* rule was violated. Even if it be assumed from the facts stated that he had already been taken into custody at the time he allegedly proclaimed his gladness at the discovery of the hashish, the police had not begun "a process of interrogation," nor had the applicant "requested and been denied an opportunity to consult with his lawyer."

Nor does application of the *Miranda* rule benefit the applicant. Diaz made a spontaneous, volunteered statement. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Indeed this seems to be the type of situation foreseen by dissenters in *Miranda* who said (384 U.S. at 533, 86 S.Ct. at 1658, 16 L.Ed.2d at 757–758):

> "Although in the Court's view in-custody interrogation is inherently coercive, it says that the spontaneous product of the coercion of arrest and detention is still to be deemed voluntary. An accused, arrested on probable cause, may blurt out a confession which will be admissible despite the fact that he is alone and in custody, without any showing that he had any notion of his right to remain silent or of the consequences of his admission. * * * *"

### VI. Improper Jury Instruction.

No error in the jury instruction can be found. It was in all respects fair and adequate. Barfield v. United States, 229 F.2d 936 (5th Cir. 1956); Myricks v. United States, 370 F.2d 901 (5th Cir. 1967). The applicant's claim that the judge who presided at the criminal trial charged that jury that, if they found him guilty on one count, they should convict him on all three counts, is clearly belied by the official transcript.

In addition, at the conclusion of the charge to the jury the Court inquired of Mr. Borrello, "Is there any objection to my charge?" and Mr. Borrello stated, "We have no objection, Your Honor." Even had there been errors in the charge they should of course have been raised then.

### VII. Failure to Appeal.

Although he said nothing of this in the application, at the first hearing Diaz raised the issue that his retained counsel improperly failed to appeal

his conviction. Mindful of the right of an applicant to have a hearing on a claim that he was denied a right to appeal by the fraud and deceit of his counsel, Bray v. United States, 370 F.2d 44, (5th Cir. 1966), a further hearing was held on this charge and testimony was heard from Diaz, his wife, his stepdaughter, and from both lawyers who represented him.

Neither fraud, deceit, nor improper failure to appeal was shown. Diaz' lawyers gave him what they thought to be sound advice relative to appeal. There is no occasion here to apply the doctrine of Camp v. United States, 352 F.2d 800 (5th Cir. 1965) or Lyles v. United States, 346 F.2d 789 (5th Cir. 1965). Here we have simply a client who sought advice, got it, followed it, and now decides the advice was not sound. This is merely second-guessing.

For the reasons stated, judgment is rendered denying the application. This opinion will serve as the findings of fact and conclusions of law.