**UNITED STATES of America ex rel. Andrew J. HERHAL, Petitioner,**

v.

**Raymond ANDERSON, Warden, Delaware Correctional Center, Respondent.**

No. 153.

United States District Court, D. Delaware.

Nov. 30, 1971.

Andrew J. Herhal, pro se.

## OPINION AND JUDGMENT

LATCHUM, District Judge.

Andrew J. Herhal ("Herhal"), a State prisoner, has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was permitted to proceed *in forma pauperis*.

In October 1966 Herhal was first convicted in the Delaware Superior Court by a jury of first degree murder of Sally Deputy. The Delaware Supreme Court in May, 1968 reversed his conviction and remanded the case for a new trial. Herhal v. State, 243 A.2d 703 (Del.Supr. 1968). On November 18, 1968 Herhal was again tried before a jury in the Delaware Superior Court on a charge of second degree murder of Sally Deputy. This trial ended in a mistrial because the jury was unable to agree upon a verdict. Herhal was retried on the second degree murder charge and was convicted by the jury on May 7, 1969. On November 20, 1969, he was sentenced to life imprisonment. Upon appeal to the Delaware Supreme Court, his conviction was affirmed. Herhal v. State, 283 A.2d 482 (Del.Supr.1971).

Jurisdiction is founded upon 28 U.S.C. § 2241. The requisite exhaustion of State remedies required by 28 U.S.C. § 2254 has been shown.

This Court has reviewed in detail the State Court records in this case and has found that Herhal was granted a full and fair hearing in the State Courts on the identical questions which he raises in his present petition. The record indicates that his grounds for habeas corpus relief do not involve disputed questions of fact but simply questions of law. Accordingly, no new hearing was necessary in this Court. Town-

send v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Herhal charges that his federal constitutional rights have been violated for the following reasons: (1) the State illegally removed dirt samples from the underside of his automobile in violation of the Fourth Amendment, (2) the State illegally obtained statements from him in violation of the Fifth and Sixth Amendments, and (3) the State produced a surprise witness in rebuttal, who placed him at the scene of the crime, thereby denying him a fair trial and his Sixth Amendment right to confront witnesses against him.

Each of the contentions will be discussed separately.

## I. Unreasonable Search.

It is claimed that the soil samples removed from the underside of Herhal's car were improperly seized, and that, therefore, the testimony of the F.B.I. soil analyst was improperly admitted into evidence.[1]

On April 27, 1966 the petitioner's car was searched by the Delaware State Police pursuant to a search warrant. The objects of the search, as spelled out in the warrant, were the instruments of a criminal offense, in particular, a knife or other sharp instrument, and also any clothing containing traces of blood. During the course of the search, the police hoisted Herhal's automobile on a lift in order to examine its underside. While the automobile was in the raised position, Sergeant Thomson noticed "dirt wedged up in the cross member near the A frame in the front" of the automobile. (Tr. 248.) It was removed, along with a beer can that was wedged in with the dirt, because Officer Thomson believed it had come from the area of Locust Avenue, the scene of the crime,

---

1. This expert testimony was adduced by the prosecution to show that this soil and a sample removed from the area under construction on Locust Avenue, near the scene of the crime, were identical in most respects. Agent Miller also testified that the soil removed from the petitioner's car came from either Locust Avenue or from another area where the same soil combinations mixed with limestone chips were to be found. (Tr. 268–273). Because there are two trial transcripts on record, one for the first trial and one for the third trial, all references to the first transcript will be followed by an asterisk [*].

as that area was then undergoing some construction. It "was the only area, or section of road in the immediate area that was under construction at the time where dirt may possibly have, or could have been scraped or dug up [by] the underneath section of the car." (Tr. 251.)

The Delaware Supreme Court in rejecting Herhal's constitutional argument on this point relied on the fact that the soil clinging to the car's underside, which was seized, came into plain view during the execution of a validly issued search warrant. Herhal v. State, 283 A. 2d 482 (Del.Supr.1971). This Court concurs in that judgment.

The "plain view" test was recently considered in detail by the United States Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In that case the Supreme Court cleared up much of the confusion surrounding the "plain view" test and adjusted the proper focus of judicial inquiry when considering Fourth Amendment questions arising out of the seizure of evidence that was inadvertently discovered because it was in plain view. The Court in considering the problem concluded:

> "The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal."

> \* \* \* \* \* \*

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the orig-inal justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." (Citation omitted.)

"The rationale for the 'plain view' exception is evident if we keep in mind the two distinct constitutional protections served by the warrant requirement. First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that *any* intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. See, e. g., McDonald v. United States, 335 U.S. 451 [69 S.Ct. 191, 93 L.Ed. 153]; Warden v. Hayden, 387 U.S. 294 [87 S.Ct. 1642, 18 L.Ed.2d 782]; Katz v. United States, 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576]; Chimel v. California, 395 U.S. [752], at 761–762 [89 S.Ct. 2034, 2039, 23 L.Ed.2d 685]. The second distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings. See, e. g., Boyd v. United States, 116 U.S. 616, 624–630 [6 S.Ct. 524, 528–532, 29 L.Ed. 746]; Marron v. United States, 275 U.S. 192, 195–196 [48 S.Ct. 74, 75–76, 72 L.Ed. 231]; Stanford v. Texas, 379 U.S. 476 [85 S.Ct. 506, 13 L.Ed.2d 431]. The warrant accomplishes this second objective by requiring a 'particular description' of the things to be seized.

"The 'plain view' doctrine is not in conflict with the first objective because plain view does not occur until a search is in progress. In *each case, this initial intrusion is justified by a warrant or by an exception such as*

*'hot pursuit' or search incident to a lawful arrest, or by an extraneous valid reason for the officer's presence. And, given the initial intrusion, the seizure of an object in plain view is consistent with the second objective, since it does not convert the search into a general or exploratory one. As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement. Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it."* 403 U.S. 466–468, 91 S.Ct. 2037–2039. (Emphasis added).

The facts in this case fit securely within the above framework. The seizure of Herhal's automobile was justified pursuant to a valid warrant.[2] It was issued after the determination, by a Superior Court Judge, that there was probable cause for such a warrant. It was limited in scope; the objects of the search being a knife or sharp instrument capable of inflicting a fatal wound, and also any clothing containing traces of blood. The dirt wedged in the automobile's underside came into "plain view" during the course of the search pursuant to a valid search warrant, and it was inadvertently discovered by one of the officers investigating the crime. (Tr. 248–250.) There was cause to believe that the evidence found would aid in securing a conviction in the case. There was an obvious "nexus" between the dirt wedged under the car and that exposed in the area of construction near the scene of the murder. Warden v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

The initially valid search was not expanded into a general search. The only evidence seized was the soil wedged in the underside of the automobile. In light of these facts and the *Coolidge* and *Hayden* cases, this Court concludes that petitioner's contention that the seizure of the dirt was unconstitutional is unfounded.

II. Illegally Obtained Statements.

▇ Petitioner next contends that his conviction resulted in part from the admittance into evidence of certain illegally obtained statements in violation of his Fifth and Sixth Amendment rights under the United States Constitution, as interpreted by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). This argument relies on the following contentions: (1) that petitioner became the prime suspect in the case when both he and his automobile were identified at the funeral of Sally Deputy; (2) that on April 27, 1966 he was taken to Troop 1 Headquarters of the Delaware State Police for questioning and was there advised of his rights; (3) that he immediately stated that he would have to get a Public Defender;[3] (4) that he was arrested on a Family Court capias at approximately 9:00–9:30 P.M. on April 27, 1966 and was subsequently sentenced for an unrelated offense to the Delaware Correctional Center; (5) that on May 2, 1966, apparently pursuant to his statement as to his desire for a Public Defender, petitioner was interviewed by an investigator from the Public Defender's Office; (6) that on May 5, 1966 several police officers went to the Correctional Center for the purpose of arresting Herhal on the charge of first degree murder and for the purpose of interrogating him without his attorney present; (7) that upon

2. The petitioner has not questioned the validity of the warrant as issued.

3. Tr. *72–73.

being advised that he was under arrest for murder and again of his constitutional rights, Herhal immediately requested that the Public Defender be called and stated: "I didn't kill Sally; I was nowhere near the house that day.";[4] (8) that the *Miranda* case prohibits the use of all statements, whether inculpatory or exculpatory, obtained during custodial interrogation, unless the accused knowingly, voluntarily, and intelligently waived his constitutional rights; (9) that the statement that he "didn't kill Sally" was made during a custodial interrogation, and that he did not knowingly waive his right to counsel on May 5, 1966, a right he claims was asserted on April 27, 1966; (10) that the *Miranda* case forbids all interrogation of a suspect if he requests, as Herhal contends he did on April 27, 1966, an attorney; and (11) that the police violated petitioner's Sixth Amendment right to have his counsel present at all critical stages of the proceeding by confronting him without notifying his counsel.

The Court finds no merit to the above contentions. The cases relied upon by petitioner are inapposite to the facts of this case.

Initially, while the *Miranda* case expressly forbids the use of either inculpatory or exculpatory statements obtained during a custodial interrogation unless the accused knowingly, voluntarily, and intelligently waived his constitutional rights,[5] it makes clear that volunteered statements are in no way affected by the decision. The Supreme Court stated:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U.S. at 478, 86 S.Ct. at 1630.

In the instant case, Herhal's statement that he "didn't kill Sally Deputy" since he was "nowhere near the house that day" was volunteered. It was given after he had received his *Miranda* warnings, and it was not prompted by any form of interrogation. While "interrogation can be so subtly designed as to avoid specific questions being initiated by the interrogator,"[6] this Court finds that there was no interrogation of any kind conducted by the police in this case. The officers when confronting petitioner simply informed him that he was under arrest for murder. The statement that followed was not the result of any improper controlling circumstances, despite the fact that he was already in custody for an unrelated offense. It was a voluntary statement, the kind of statement that the *Miranda* case and its progeny have sanctioned on numerous occasions. *Accord,* United States v. Bourassa, 411 F.2d 69, 72 (C.A.10, 1969), cert. den. 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969); United States v. De Bose, 410 F.2d 1273, 1275 (C.A.6, 1969); United States v. Ruffin, 389 F.2d 76, 80 (C.A.7, 1968); Stone v. United States, 385 F.2d 713, 716–717 (C.A.10, 1967), cert. den. 391 U.S. 966, 88 S.Ct. 2038, 20 L.Ed.2d 880 (1968); United States v.

---

4.  Tr. 137, 639.

5.  384 U.S. at 444, 477, 86 S.Ct. 1602.

6.  United States v. Godfrey, 409 F.2d 1338, 1339 (C.A. 10, 1969).

Duke, 369 F.2d 355, 358 (C.A.7, 1966), cert. den. 386 U.S. 934, 87 S.Ct. 957, 17 L.Ed.2d 806 (1967); King v. Pinto, 256 F.Supp. 522, 526 (D.N.J.1966), aff'd 376 F.2d 593 (C.A.3, 1967); United States ex rel. White v. Myers, 252 F.Supp. 832, 834 (E.D.Pa.1966).

A clear statement of the law on this point, in a case similar to the facts in the instant case, appears in Caton v. United States, 407 F.2d 367 (C.A.8, 1969), cert. den. 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969), where the Court found no error in admitting statements made by the defendant after a request for counsel. The Court stated:

"The defendant had been fully informed of his rights. The statement was not elicited through trickery, misrepresentation or coercion. It was not even the product of an interrogation. '* * * Volunteered statements of any kind are not barred by the Fifth Amendment * * *.'" (Citation omitted.) (407 F.2d at 374.)

Thus, having found that there was no interrogation of Herhal at the time of his arrest for murder and that the statement in question was spontaneously and voluntarily made, the Court holds that there is no merit in petitioner's contention that the *Miranda* rules were violated in that the police interrogated him on May 5, 1966 without counsel present, despite the fact that petitioner had asserted, on April 27, 1966, his desire to have a Public Defender. *Accord,* Reinke v. United States, 405 F.2d 228 (C.A.9, 1969).

■ Furthermore, the Court finds no support for the contention that appellant's Sixth Amendment right to counsel under United States v. Wade, supra, was violated by not having counsel present at the time of his arrest on the murder charge. Herhal cites no authority, nor has the Court found any, extending the *Wade* rule to the time of arrest. There is authority, however, to the contrary that holds there is no constitutional right to have counsel present at the time of arrest. In Diaz v. United States, 264 F.Supp. 937 (E.D.La.1967), aff'd 391 F.2d 932 (C.A.5, 1968), the District Court stated:

"* * * there is no requirement that an accused have counsel appointed before law enforcement officers can arrest him." (264 F.Supp. at 943.)

And in King v. Pinto, supra, 256 F.Supp. 522, the District Court stated:

"The ruling of *Escobedo* does not require the presence of legal counsel at the moment of arrest and seizure. In any event, the present petitioner at the very moment of arrest was promptly and specifically advised of his rights to counsel, to remain silent, and to deny the request of the arresting officers for permission to search his apartment. He relinquished known constitutional rights." (256 F.Supp. at 529.)

■ This Court holds that the *Wade* decision did not affect the above holdings. The "time of arrest" is not one of those critical stages of a prosecution to which the constitutional right to have counsel present attaches under *Wade*.

III. Testimony of Surprise Witness.

■ Lastly, Herhal contends that he was denied both a fair trial and the Sixth Amendment right to confront witnesses when the State called in rebuttal, as a surprise witness, a trash man, who placed Herhal's automobile at the scene of the crime on the day in question.

■ After a careful review of the record, the Court concludes that these contentions are also baseless. In support of his fair trial argument, petitioner relies on several Federal and State cases in which various courts have ruled that the deliberate suppression by the prosecution of evidence favorable to the defendant amounted to a denial of a fair trial. Such is not the case here. None of the cases relied upon by petitioner dealt with the use of the testimony of a so-called surprise witness. While it is unconstitutional to withhold evidence

favorable to a defendant, see Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1967), there is no constitutional requirement that the prosecution must reveal its witnesses to the defense before trial. Nor is it wrong to wait until rebuttal before offering such a witness. The witness in this case was called to rebut the flat denial of Herhal of ever being present at the scene on that day. This procedure of witness presentation lies within the sound discretion of the trial judge. See Rodella v. United States, 286 F.2d 306, 309 (C.A. 9, 1960), cert. den. 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961); Samish v. United States, 223 F.2d 358, 365 (C.A.9, 1955), cert. den. 350 U.S. 848, 76 S.Ct. 85, 100 L.Ed. 755 (1955); Gaston v. State, 234 A.2d 324, 325 (1967). The Court finds no abuse of this discretion in the present case.

■ Petitioner's Sixth Amendment claim is also meritless. A review of the record does not support petitioner's claim that he was denied an "adequate opportunity to cross-examine" the witness. The witness was presented as any other witness would be presented at any trial, the only difference being that he was called in rebuttal and was not called when the State presented its case in chief. Prior to cross-examination, petitioner's counsel was given an opportunity to examine a previous statement given by the witness to the police, and at trial the defense was extended its full and usual right to cross-examination.

No probable cause exists for an appeal. Fitzsimmons v. Yeager, 391 F.2d 849, 854 (C.A.3, 1968).

## JUDGMENT

Finding that there is no merit to the allegations of the present petition, it is ordered and adjudged (a) that the petition for habeas corpus be dismissed and the writ denied, and (b) that a certified copy of this Opinion and Judgment be sent by the Clerk to petitioner and respondent.