Louis GOODEN, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–779A202.

Court of Appeals of Indiana,
Third District.

March 12, 1980.

J. David Keckley, South Bend, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Michael G. Worden, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

HOFFMAN, Judge.

Defendant-appellant Louis Gooden was found guilty as charged on two counts of violating the Indiana Controlled Substances Act: possession of heroin and possession of marijuana. His appeal raises these issues:

(1) whether the trial court erred in denying the defendant's pretrial motion to suppress;

(2) whether it was error to allow a police officer to testify as to the street value of the heroin found;

(3) whether the evidence was sufficient to sustain the convictions; and

(4) whether the trial court erred in excluding defendant's Exhibit E from evidence.

Gooden contends that the trial court erred when it denied his pretrial motion to suppress statements he made to the police. He insists that there was no intelligent or knowing waiver of his right to remain silent and his right to have counsel present during questioning.

A trial court's ruling on voluntariness will not be disturbed as long as there is substantial probative evidence to sustain the finding. *Bean v. State* (1978), Ind., 371 N.E.2d 713. Where the evidence is conflicting only that evidence which supports the trial court's determination, along with any uncontested evidence presented by the defendant, will be considered. *Gutierrez v. State* (1979), Ind., 388 N.E.2d 520.

Viewing the evidence in a light most favorable to the judgment discloses the following circumstances: Around 11:45 P.M. on March 11, 1977 Captain Smith and several other South Bend police officers gathered outside the residence located at 714 North

Eddy Street to execute a search warrant for narcotics. Peering through a window Smith observed Gooden and Dorothy Jennings sitting on a couch in the living room. Smith rapped hard on the front door and shouted, " 'Police, open up.' " Gooden moved away from the door and dashed toward the rear of the house. Smith and Sergeant Szalay then kicked the door in. Once inside they saw Gooden aiming a revolver at them. Although they ordered Gooden to drop the gun he instead ran for the northwest bedroom. Shortly thereafter he was apprehended.

After reading the search warrant to the couple, Smith advised them of their *Miranda* rights. While he was reciting these rights the defendant interrupted to ask who had done this to him. At this point Smith was called into the northwest bedroom where the other officers had been conducting a search. Emerging ten minutes later he informed the defendant that some heroin had been found. The defendant replied, "This is all my stuff, don't charge her with it." Smith then asked the defendant who the premises belonged to and the defendant responded that it was his house.

Smith testified that the defendant did not act as though he was under the influence of drugs or alcohol during the raid and that his speech was normal. He also testified that the defendant appeared to understand his rights. Szalay stated that the defendant indicated he understood those rights.

■■ The trial court committed no error in overruling the motion to suppress the statements. There was no evidence presented indicating unusual or coercive action by the police which logically would have misled the defendant or overborne his will at the time the statements were made. There was ample evidence that the defendant was advised of his *Miranda* rights and that he understood them. Moreover, the record shows that the defendant was not being questioned by the police officers when he made his statements. They were unsolicited and spontaneous remarks. Volunteered statements are not barred by the Fifth Amendment. *Ringley v. State* (1979),

Ind.App., 395 N.E.2d 339; *Chambers v. State* (1979), Ind., 392 N.E.2d 1156; *Washington v. State* (1979), Ind., 390 N.E.2d 983. It should be emphasized that the statements referred to were made at the scene of the crime and contemporaneous with the search. These statements were not made after he had been in custody for any appreciable length of time nor were they made in the inherently coercive atmosphere of the stationhouse. *New v. State* (1970), 254 Ind. 307, 259 N.E.2d 696. Either of those two situations might easily cast grave doubts on their spontaneity and voluntariness but such is not the case here.

■ Gooden challenges the admission of evidence of the street value of the heroin seized on the grounds that it was irrelevant. This contention is not well taken. As noted in *Williams v. State* (1973), 129 Ga.App. 103, 198 S.E.2d 683, at 686, a case involving possession of controlled substances:

"There was no error in allowing the officer to testify from his knowledge gained as a member of the narcotics for several years as to the value of the drugs seized. While the value of the drugs is not a necessary ingredient which the State must prove, it can be helpful to the jury in the light of other circumstances in the evidence to know whether the quantity of drugs was inconsequential or substantial."

*See also, State v. Pristell* (1970), 3 Wash. App. 962, 478 P.2d 743 where testimony regarding value of heroin found near defendant charged with illegal possession of heroin was admissible over objection that it suggested to the jury that defendant was engaged in the sale of heroin, since testimony was offered to establish that heroin was of value and therefore less likely to be carelessly misplaced.

■ As a corollary to his assertion Gooden alleges that the witness who testified as to the street value, Sergeant Walsh, was not an expert. Whether Walsh qualified as an expert was a matter resting within the sound discretion of the trial court and the exercise of that discretion should not be disturbed unless abused. *Horn v. State* (1978), Ind.App., 376 N.E.2d 512. As a gen-

eral rule an expert may be qualified by practical experience as well as by formal training. *Culley v. State* (1980), Ind.App., 385 N.E.2d 486. Walsh testified that he had worked in the narcotics detail of the South Bend Police Department for 3½ years. He had made over 100 purchases of narcotics including 15 for heroin. Under these circumstances there was no abuse of discretion.

Defendant also claims the evidence was insufficient to prove beyond a reasonable doubt that he had possession of the controlled substances.

"Since possession of a controlled substance in Indiana may be founded upon either actual or constructive possession, we need only determine whether the evidence was sufficient to prove constructive possession.

"In *Thomas v. State* (1973) 260 Ind. 1, 291 N.E.2d 557, 558, our Supreme Court defined constructive possession as the 'intent and capability to maintain control and dominion' over the substance. The opinion states that the requisite intent can be inferred from the voluntary commission of the act. In this regard the evidence must establish knowledge both of the item's presence and of its forbidden character. Id.; *Phillips v. State* (3d Dist. 1974) [160] Ind.App. [647,] 313 N.E.2d 101. See also, *Greely v. State* (1st Dist.1973) 158 Ind.App. 212, 301 N.E.2d 850, 852; *Corrao v. State* (3d Dist.1972) 154 Ind.App. 525, 290 N.E.2d 484, 487; Annot., 91 A.L.R.2d 810, 821–27 (§ 5).

"Regarding the capability to maintain control over the substance, proof that the accused had the drug on his person is not required. For constructive possession, the evidence need only establish the defendant's ability to control, that is, the ability to reduce the substance to his personal possession or to otherwise direct its disposition or use. *E. g., Corrao v. State, supra.* See also, *Phillips v. State, supra,* 313 N.E.2d at 104 (Garrard, J., concurring).

"Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found. A possessory interest in the premises or area is generally held sufficient to show the ability to exercise control over drugs found therein. *Corroa v. State, supra* (control by registered owner of car). Yet a house or apartment used as a residence is controlled by the person who lives in it and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee. *Ludlow v. State,* (3d Dist.1973) Ind.App., 302 N.E.2d 838, rev'd on other grounds (1974) Ind., 314 N.E.2d 750 (defendant gave his address as the premises where drugs were found). Additionally, the practical ability to control the area may be sufficient, as was the case in *Corrao v. State, supra,* where the driver, as well as the owner of the car, was found in control of marijuana located in the trunk on the theory that he had the car keys and so could have entered the trunk.

"As to the quantum of proof necessary to sustain a conviction for knowing possession, evidence that a person has *exclusive* control of the premises permits the inference that he has constructive possession of any drugs found on those premises. The element of knowledge can reasonably be inferred from evidence of exclusive control alone. *E. g., Phillips v. State, supra.*" (Original emphasis) (Footnotes omitted) *Martin v. State* (1978), Ind. App., 372 N.E.2d 1194, at 1197.

However, such knowledge may not be reasonably inferred where access to and control of the premises is non-exclusive. Therefore, the rule in cases of non-exclusive possession of premises on which narcotics are found is that such possession does not give rise to the inference of knowledge absent evidence of additional incriminating statements or circumstances warranting it. *Mills v. State* (1978), Ind.App., 379 N.E.2d 1023; *Martin v. State, supra.*

Here the evidence was adequate to link the defendant with the drugs found in the northwest bedroom. Gooden testified that he was living at the Eddy Street residence on March 11, 1977. When the police

approached the door and announced their presence Gooden headed for the rear of the house. Once inside the officers saw Gooden aiming a gun at them. When they ordered him to drop it Gooden ran but was apprehended near the doorway of the northwest bedroom.

A search of the dresser in this bedroom revealed a plastic bag protruding from the top left drawer. Inside the bag were five tin foil packets of heroin. In this same drawer were cards from the Indiana Employment Security Division and the St. Joseph DPW Food Stamp Division. Both were issued in Gooden's name. Several small bags of marijuana were found in a lower drawer. Upon being apprised that heroin had been confiscated Gooden sought to exculpate his female companion by admitting that the drugs were his. From the suspicious behavior that he exhibited, his possessory interest in the house, the personal items found in the drawer and the statement to the police, the trier of fact was entitled to infer that Gooden knew of the presence of the controlled substances.

Gooden next maintains it was error to exclude Exhibit E, a receipt book, from evidence. His position is that since the convictions rested on a finding of constructive possession a material issue in the case was whether he had exclusive control over the residence. He urges that the receipt book was relevant because it rendered the desired inference that he was not in exclusive possession of the house more probable than it would be without this evidence.

There was evidence that during his occupancy of the house in question Gooden rented portions of the premises to others and issued receipts documenting that fact. Exhibit E was asserted to be a receipt book containing the names of all the tenants there from March 1, 1974 until the day of trial. Gooden testified that the northwest bedroom where the contraband was located had been rented to John Alexander from March 1 to March 12, 1977.

When Gooden sought to introduce the receipt book at trial the State objected. In response to a question from the trial court Gooden admitted there was nothing in the exhibit indicating that any receipts were issued to Alexander.

The trial court enjoys a wide latitude in ruling on the relevance of evidence in a criminal proceeding and the exclusion of evidence because it is irrelevant is within the discretion of the trial court. *Woolum v. State* (1978), Ind.App., 381 N.E.2d 1072. Its determination with respect to such exclusion will not be reversed on appeal in the absence of an abuse thereof. *Misenheimer v. State* (1978), Ind., 374 N.E.2d 523. Such abuse may be shown by appellant's demonstration that the ruling was contrary to the logic and effect of the facts and circumstances before the court. *State v. Moore* (1979), Ind.App., 391 N.E.2d 665. Here Gooden made no such showing especially in light of the fact that he was permitted to introduce oral testimony that Alexander resided there.

No reversible error having been shown, the judgment of the trial court is affirmed.

Affirmed.

GARRARD, P. J., and STATON, J., concur.