STATE *ex rel.* JESSE W. WHITE

*v.*

RICHARD G. MOHN, *Supt., WVP, etc.*

(No. 14785)

Decided November 3, 1981.

*Chauncey H. Browning*, Attorney General, *and Gregory W. Bailey*, Deputy Attorney General, for appellant.

*Evans & Berry and Rodney T. Berry*, for appellee.

MILLER, JUSTICE:

On December 11, 1972, appellee Jesse W. White, was sentenced to life imprisonment in the State Penitentiary by the Common Pleas Court of Cabell County. He was previously convicted by a jury of first degree murder.

By an order entered on September 7, 1979, the Circuit Court of Marshall County awarded appellee a writ of habeas corpus. The Court declared White's conviction of first degree murder void and stayed the execution of the order to permit the State to take this appeal. The basis for

the lower court's ruling was that at White's criminal trial two inculpatory statements made by him were introduced into evidence without an *in camera* hearing to determine their voluntariness and, therefore, under Syllabus Point 1 of *State v. Fortner*, 150 W. Va. 571, 148 S.E.2d 669 (1966),[1] and related cases, his conviction should be set aside. For reasons more fully elaborated herein, we reverse the judgment of the lower court.

Neither *Fortner* nor some of the cases following it[2] gave any consideration to the case of *Jackson v. Denno*, 378 U.S. 368, 12 L.Ed.2d 908, 84 S.Ct. 1774 (1964). In *Jackson*, the Supreme Court concluded that the failure to hold an *in camera* voluntariness hearing on the defendant's inculpatory statement would not automatically result in a reversal of his criminal conviction, but the case should be remanded for purposes of holding a voluntariness hearing. If, after such hearing, the statements were found to be voluntary, then the conviction would stand. On the other hand if the statements were found to be involuntary, the conviction would have to be set aside.

In *State v. Brewster*, \_\_\_\_ W. Va. \_\_\_\_, 261 S.E.2d 77, 82 (1979), we applied the *Jackson v. Denno* procedure in remanding a case to determine if the defendant's conviction should be reversed because he had been shackled throughout his trial. We directed the trial court to hold a hearing to ascertain if there was a factual necessity for the shackling. *See also, State v. Lawson*, \_\_\_\_ W. Va. \_\_\_\_,

---

[1] Syllabus Point 1 of *State v. Fortner, supra*, states:

"It is the mandatory duty of a trial court, whether requested or not, to hear the evidence and determine in the first instance, out of the presence of the jury, the voluntariness of an oral or written confession by an accused person prior to admitting the same into evidence, and the failure to observe this procedure constitutes reversible error."

[2] *See, e.g., State v. Tomey*, 163 W. Va. 578, 259 S.E.2d 16, 17 (1979); *State v. Lamp*, 163 W. Va. 93, 254 S.E.2d 697, 698-99 (1979); *State v. Staley*, 162 W. Va. 800, 253 S.E.2d 66, 68 (1979); *Arthur v. McKenzie*, 161 W. Va. 747, 245 S.E.2d 852, 853 (1978); *State v. Sanders*, 161 W. Va. 399, 242 S.E.2d 554, 556 (1978); *State v. Johnson*, 159 W. Va. 682, 226 S.E.2d 442, 445-46 (1976); *Spaulding v. Warden*, 158 W. Va. 557, 212 S.E.2d 619, 624 (1975); *State v. Smith*, 158 W. Va. 621, 212 S.E.2d 759, 762 (1975); *State v. Plantz*, 155 W. Va. 24, 36, 180 S.E.2d 614, 622 (1971).

267 S.E.2d 438 (1980) (right to introduce blood test). In *State v. Clawson,* ___ W. Va. ___, 270 S.E.2d 659, 671 (1980), we specifically addressed the *Jackson v. Denno* principle in regard to the failure to hold an *in camera* hearing on an inculpatory statement. We held in Syllabus Point 5:

> "Where there is a failure to hold an *in camera* hearing on the defendant's inculpatory statements, we recognize under *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), that the case will not be reversed for a new trial on this basis alone. Instead, it will be remanded for a voluntariness hearing before the trial court. If the trial court finds the statements are voluntary the verdict will stand. If, on the other hand, he finds the statements to be involuntary, the verdict will be set aside unless the trial court determines that this constitutional error is harmless beyond a reasonable doubt."[3]

Admittedly, the discussion of the *Jackson v. Denno* principle in *State v. Clawson* was not extensive because we reversed the conviction on another ground. We did not state in *Clawson,* as we do now, that Syllabus Point 1 of *State v. Fortner, supra,*[4] is overruled to the extent that it states that the failure to hold an *in camera* hearing on the voluntariness of a confession "constitutes reversible error." We also overrule similar language occurring in syllabus points of other post-*Fortner* cases. We conclude here that the proper procedure is that contained in Syllabus Point 5 of *Clawson, supra.*

Consequently, we hold that the lower court erred in concluding that White was entitled to have his conviction

---

[3] This harmless constitutional error test was applied to the introduction of an invalid confession in *Milton v. Wainwright,* 407 U.S. 371, 33 L.Ed.2d 1, 92 S.Ct. 2174 (1972). *Cf. Schneble v. Florida,* 405 U.S. 427, 31 L.Ed.2d 340, 92 S.Ct. 1056 (1972). Because of the high standard of proof needed to meet the harmless constitutional error test, *Chapman v. California,* 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824 (1967), and *State v. Boyd,* ___ W. Va. ___, 233 S.E.2d 710, 718 (1977), it will have limited applicability for curing admissions of invalid confessions.

[4] See footnote 1, *supra.*

set aside because of the failure to have a preliminary *in camera* hearing on the voluntariness of his inculpatory statements. Under *Clawson* and *Jackson v. Denno*, White was entitled to a voluntariness hearing. However, for the reasons set out below there was no reversible error in not holding the hearing, since it is abundantly clear from the record that his statements were spontaneous and made in a noncustodial surrounding.

The lower court had the benefit of the relevant portions of White's criminal trial transcript which demonstrated the following facts surrounding his inculpatory statements. Mrs. Texas Gorgia, a telephone operator employed at the Huntington office of the telephone company, testified concerning inculpatory statements made by appellee to her. She testified that on the evening of April 29, 1972, while she was at work as an operator, a male voice called and said, "Operator, connect me with the police. I have just shot and killed three people." She asked the caller's name and the address and phone number from which he was calling. The man gave his name as "Jess or Jeff White," a phone number of 525-0103, and an address of 1032 - 25th Street in Huntington. The phone number was checked through the telephone service directory and coincided with the address of 1032 - 25th Street. This information was then relayed to the police.

Officer Ronald Campbell of the Huntington police force testified concerning the second inculpatory statement. Campbell had gone to the premises at 1032 - 25th Street because the neighbors had reported a disturbance. He went to the back of the house, crossing through the backyard to gain access to the back porch. In crossing the backyard, he observed a woman lying on the ground. When he got to the porch, he found another woman lying in front of the door. When he looked inside the house, he saw White sitting in a chair and holding a rifle or shotgun against a small child's head.

Officer Campbell then asked White questions about the safety of the child. He also asked to come in, which appellee permitted. When the officer got inside, White started to talk, stating "he didn't want to do this thing but

those people made me do this." According to Officer Campbell, White demanded that a newspaper reporter be brought to the house. It was after the reporter was brought to the scene that White recounted his version of the shooting in some detail, which Officer Campbell overheard and testified to at the trial. It was not until after this newspaper interview that White gave up his weapon, released the child and surrendered to the authorities.

We find, as have the federal courts,[5] that under the foregoing facts there was no custodial interrogation. Moreover, we have recognized under certain limited circumstances that a spontaneous statement made in noncustodial surroundings may be admitted without first holding an *in camera* hearing. This point was expressed in Syllabus Point 1 of *State v. Johnson*, 159 W. Va. 682, 226 S.E.2d 442 (1976):

> "A spontaneous statement by a defendant made prior to any action by a police officer or before an accusation, arrest or any custodial interrogation is made or undertaken by the police may be admitted into evidence without the voluntariness thereof first having been determined in an *in camera* hearing."

*See also, Wilhelm v. Whyte*, 161 W. Va. 67, 239 S.E.2d 735 (1977). While *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966), is not cited in *Johnson* or *Wilhelm*, *Miranda* recognizes the admissibility of a volunteered or spontaneous statement:

---

[5] White has filed habeas corpus cases in our Federal District Courts, where his primary argument was that he should have been given *Miranda* warnings immediately on the arrival of Officer Campbell. This argument was rejected by the Fourth Circuit Court of Appeals in its Memorandum Decision (*White v. Bordenkircher*, No. 75-8191, 7/30/76). The Court found that there was no custodial interrogation under *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1960), citing also *United States v. Gibson*, 392 F.2d 373 (4th Cir. 1968). The Fourth Circuit thus affirmed the earlier holding of Chief Judge Maxwell of the United States District Court for the Northern District of West Virginia.

"There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U.S. at 478, 16 L.Ed.2d at 726, 86 S.Ct. at 1630. (Footnotes omitted)

Even though *Miranda* recognizes that a spontaneous statement need not be preceded by *Miranda* warnings in order to be admissible, the opinion fails to touch on the question of whether or not a voluntariness hearing is required under the circumstances. We answered the hearing issue in the negative in *Johnson*. It is obvious that one of the purposes of the *in camera* hearing is to determine the circumstances surrounding the making of the statement to see if in fact it was voluntary. A number of courts have recognized that a noncustodial spontaneous statement is admissible. Most of these courts hold that *Miranda* does not apply because the defendant made the statements in a noncustodial environment. *Bosley v. United States*, 426 F.2d 1257 (D.C. 1970); *Diaz v. United States*, 264 F.Supp. 937 (E.D. La. 1967), *aff'd*, 391 F.2d 932 (5th Cir. 1968); *Coleman v. State*, 394 So.2d 82 (Ala. Cr. App. 1981); *Beed v. State*, 609 S.W.2d 898 (Ark. 1980); *Thomas v. State*, 243 Ga. 217, 253 S.E.2d 190 (1979); *Gooden v. State*, 401 N.E.2d 93 (Ind. App. 1980); *State v. Jones*, 222 Kan. 56, 563 P.2d 1021 (1977); *Commonwealth v. O'Brien*, 388 N.E.2d 658 (Mass. 1979).

In some of these cases there was an initial *in camera* hearing to determine the circumstances surrounding the giving of the spontaneous statement so that the reviewing court had a sufficient factual background to confirm the voluntariness of the statements. In several of the cases, it does not appear from the record that an initial *in camera* hearing was held, but the reviewing court had the benefit of the trial transcript and could determine from it that the statement was spontaneously given. *E.g., Bosley v. United States*, 426 F.2d 1257 (D.C. 1970); *Diaz v. United States*, 264 F.Supp. 937 (E.D. La. 1967), *aff'd*, 391 F.2d 932 (5th Cir.

1968); *Thomas v. State*, 243 Ga. 217, 253 S.E.2d 190 (1979); *Gooden v. State*, 401 N.E.2d 93 (Ind. App. 1980); *Commonwealth v. O'Brien*, 388 N.E.2d 658 (Mass. 1979).

Here, we also have the benefit of the trial court record which shows the circumstances surrounding the spontaniety of appellee's inculpatory statements. We conclude from such record that they were spontaneous and come within the principle set out in Syllabus Point 1 of *State v. Johnson, supra*. Consequently, we find there is no reason to remand the case for an evidentiary hearing on the issue of voluntariness. We do wish to extend a cautionary warning that the spontaneous statement rule found in *State v. Johnson* should be narrowly construed and where there is any possibility that the spontaneous criteria do not exist or are based on conflicting evidence, the trial court should conduct a preliminary *in camera* hearing.

For the foregoing reasons, the judgment of the circuit court is reversed and the writ of habeas corpus is dismissed as improvidently awarded.

*Case Reversed and*
*Writ Dismissed as*
*Improvidently Awarded.*